UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

NASHVILLE DIVISION

| | | |
|---|---|---|
| JACKSON COUNTY EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Civil Action No. |
| | ) | <u>CLASS ACTION</u> |
| Plaintiff, | ) ) | COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS |
| vs. | ) ) | |
| ACADIA HEALTHCARE COMPANY, INC., JOEY A. JACOBS, BRENT TURNER, DAVID DUCKWORTH, E. PEROT BISSELL, CHRISTOPHER R. GORDON, VICKY B. GREGG, WILLIAM F. GRIECO, WADE D. MIQUELON, WILLIAM M. PETRIE, HARTLEY R. ROGERS, REEVE B. WAUD and CITIGROUP GLOBAL MARKETS INC., | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |
| | ) | <u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Jackson County Employees' Retirement System ("plaintiff") has alleged the following based upon the investigation of plaintiff's counsel, which included a review of U.S. Securities and Exchange Commission ("SEC") filings by Acadia Healthcare Company, Inc. ("Acadia" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and analyst and media reports about the Company. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a securities class action on behalf of purchasers of Acadia publicly traded securities between February 23, 2017 and October 24, 2017, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Act of 1933 ("1933 Act") and the Securities Exchange Act of 1934 ("1934 Act").

2. Defendant Acadia is a healthcare company that operates inpatient psychiatric facilities, residential treatment centers, group homes, substance abuse facilities, and facilities providing outpatient behavioral healthcare services to serve the behavioral health and recovery needs of communities throughout the United States, the United Kingdom ("U.K.") and Puerto Rico. As of September 30, 2017, Acadia purportedly operated a total of 579 behavioral healthcare facilities with approximately 17,400 beds.

3. Throughout and before the Class Period, defendants made numerous materially false and misleading statements and omissions to investors regarding Acadia's business and operations, including by: (a) falsely stating that the quality of its U.K. operations gave the Company a "competitive strength" which would drive future growth and profitability; and (b) issuing false and misleading guidance regarding the Company's actual and projected 2017 revenue, earnings before

interest, taxes, depreciation and amortization ("EBITDA") and earnings per share ("EPS"). These false and misleading statements allowed defendants and certain of their officers, directors and affiliated entities to offload over ***$143 million*** worth of Acadia stock to unsuspecting class members while Acadia's stock price was artificially inflated by defendants' misconduct.

4.      Contrary to defendants' representations, on October 24, 2017, Acadia issued a press release announcing its financial results for the third quarter of 2017. In the press release, the Company revealed a drastic shortfall in EBITDA for its U.K. facilities, purportedly resulting from "lower census and higher operating costs." Acadia lowered its financial guidance for 2017, including lowering its EPS guidance as much as $0.24 per share.

5.      Following these revelations, which began to uncover the relevant truth that had previously been concealed from the market, Acadia's stock price collapsed, plummeting 26% from a closing price of $44.12 per share on October 24, 2017 to a closing price of $32.68 per share on October 25, 2017.

6.      The stock price declines during the Class Period caused hundreds of millions of dollars in losses to Acadia investors, who relied on the accuracy of defendants' statements and suffered damages when the truth began to be revealed. Plaintiff seeks to recover these losses on behalf of the investors who purchased or otherwise obtained Acadia publicly traded securities during the Class Period.

## JURISDICTION AND VENUE

7.      The claims asserted herein arise under and pursuant to §§11, 12(a)(2) and 15 of the 1933 Act [15 U.S.C. §§77k, 77l(a)(2) and 77o], §§10(b) and 20(a) of the 1934 Act [15 U.S.C. §§78j(b) and 78t(a)], and SEC Rule 10b-5 [17 C.F.R. §240.10b-5] promulgated thereunder. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and 1367, §22 of the 1933 Act and §27 of the 1934 Act.

8.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b), as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this District, Acadia's corporate headquarters are in this District, and defendants are subject to personal jurisdiction in this District.

9.     In connection with the acts alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the NASDAQ.

## PARTIES

10.     Plaintiff Jackson County Employees' Retirement System, as set forth in the accompanying certification incorporated herein by reference, purchased Acadia publicly traded securities during the Class Period and has been damaged thereby.

11.     Defendant Acadia, based in Franklin, Tennessee, is one of largest publicly traded behavioral health care companies in the country. During the Class Period, Acadia stock traded under the ticker symbol "ACHC" on the NASDAQ, an efficient market. As of February 27, 2018, there were over 87 million shares of Acadia's common stock outstanding.

12.     Defendant Joey A. Jacobs ("Jacobs") is, and was at all relevant times, Chairman of the Acadia Board of Directors and its Chief Executive Officer ("CEO") and signed the June 9, 2017 Form S-3 Registration Statement.

13.     Defendant Brent Turner ("Turner") is, and was at all relevant times, Acadia's President.

14.     Defendant David Duckworth ("Duckworth") is, and was at all relevant times, Acadia's Chief Financial Officer ("CFO") and signed the June 9, 2017 Form S-3 Registration Statement.

15. Defendant E. Perot Bissell ("Bissell") is, and was at all relevant times, a director of Acadia and signed the June 9, 2017 Form S-3 Registration Statement.

16. Defendant Christopher R. Gordon ("Gordon") is, and was at all relevant times, a director of Acadia and signed the June 9, 2017 Form S-3 Registration Statement.

17. Defendant Vicky B. Gregg ("Gregg") is, and was at all relevant times, a director of Acadia and signed the June 9, 2017 Form S-3 Registration Statement.

18. Defendant William F. Grieco ("Grieco") is, and was at all relevant times, a director of Acadia and signed the June 9, 2017 Form S-3 Registration Statement.

19. Defendant Wade D. Miquelon ("Miquelon") is, and was at all relevant times, a director of Acadia and signed the June 9, 2017 Form S-3 Registration Statement.

20. Defendant William M. Petrie, M.D. ("Petrie") is, and was at all relevant times, a director of Acadia and signed the June 9, 2017 Form S-3 Registration Statement.

21. Defendant Hartley R. Rogers ("Rogers") is, and was at all relevant times, a director of Acadia and signed the June 9, 2017 Form S-3 Registration Statement.

22. Defendant Reeve B. Waud ("Waud") is, and was at all relevant times, a director of Acadia and signed the June 9, 2017 Form S-3 Registration Statement.

23. The defendants referenced above in ¶¶12-14 are sometimes referred to herein as the "Officer Defendants" and are liable under §§10(b) and 20(a) of the 1934 Act for Acadia's false and misleading Class Period statements.

24. The defendants referenced above in ¶¶12 and 14-22, who signed or authorized the signing of the false and misleading Registration Statement and are liable under the 1933 Act, are sometimes referred to herein collectively with the Officer Defendants, as the "1933 Act Defendants."

25. Defendant Citigroup Global Markets Inc. ("Citigroup") is an investment banking firm that acted as the underwriter of the August 22, 2017 offering (the "Offering") and helped to draft and

disseminate the offering documents. Citigroup caused the Registration Statement to be filed with the SEC and declared effective in connection with offers and sales thereof, including to plaintiff and the Class.

26.     During the Class Period, the Officer Defendants, as senior executive officers and/or directors of Acadia, were privy to confidential, proprietary information concerning Acadia, its operations, finances, financial condition, and present and future business prospects. The Officer Defendants also had access to material adverse non-public information concerning Acadia, as discussed in detail below. Because of their positions with Acadia, the Officer Defendants had access to non-public information about its business, finances, products, markets, and present and future business prospects via internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and/or board of directors meetings and committees thereof, and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Officer Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

27.     The Officer Defendants are liable as direct participants in the wrongs complained of herein. In addition, the Officer Defendants, by reason of their status as senior executive officers and/or directors, were "controlling persons" within the meaning of §20(a) of the 1934 Act and had the power and influence to cause the Company to engage in the unlawful conduct complained of herein. Because of their positions of control, the Officer Defendants were able to and did, directly or indirectly, control the conduct of Acadia's business.

28.     The Officer Defendants, because of their positions with the Company, controlled and/or possessed the authority to control the contents of its reports, press releases and presentations to securities analysts and, through them, to the investing public. The Officer Defendants were

provided with copies of the Company's reports and press releases alleged herein to be misleading, prior to or shortly after their issuance, and had the ability and opportunity to prevent their issuance or cause them to be corrected. Thus, the Officer Defendants had the opportunity to commit the fraudulent acts alleged herein.

29. As senior executive officers and/or directors and as controlling persons of a publicly traded company whose stock was, and is, registered with the NASDAQ and governed by the federal securities laws, the Officer Defendants had a duty to promptly disseminate accurate and truthful information with respect to Acadia's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings, and present and future business prospects, and to correct any previously issued statements that had become materially misleading or untrue, so that the market price of Acadia stock would be based upon truthful and accurate information. The Officer Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

30. The Officer Defendants are liable as participants in a fraudulent scheme and course of conduct that operated as a fraud or deceit on purchasers of Acadia securities by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (a) deceived the investing public regarding Acadia's business, operations and management, and the intrinsic value of Acadia securities; and (b) caused plaintiff and members of the Class (defined below) to purchase Acadia securities at artificially inflated prices.

## CLASS ACTION ALLEGATIONS

31. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all those who purchased Acadia publicly traded securities during the Class Period, including in connection with the Offering, and who were damaged thereby (the "Class"). Excluded from the Class are defendants and their

immediate families, the officers and directors of the Company, at all relevant times, members of their immediate families, and their legal representatives, heirs, successors or assigns, and any entity in which defendants have or had a controlling interest.

32. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Acadia stock was actively traded on the NASDAQ. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Acadia or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

33. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law complained of herein.

34. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and securities litigation.

35. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by defendants' acts as alleged herein;

(b) whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business and operations of Acadia;

(c) whether the prices of Acadia securities were artificially inflated during the Class Period; and

(d)     to what extent the members of the Class have sustained damages and the proper measure of damages.

36.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## DEFENDANTS' MATERIALLY FALSE AND MISLEADING CLASS PERIOD STATEMENTS

37.     During the Class Period, defendants materially misled the investing public, thereby inflating the prices of Acadia securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading.  Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

38.     On February 23, 2017, Acadia issued a press release entitled "Acadia Healthcare Reports Fourth Quarter GAAP EPS of $0.48 and Adjusted EPS of $0.59; Establishes Financial Guidance for 2017."  In the press release, Acadia announced financial results for the fourth quarter ended December 31, 2016:

> Revenue for the quarter increased 41.9% to $702.9 million from $495.3 million for the fourth quarter of 2015.  Net income from continuing operations attributable to Acadia stockholders was $41.8 million, up 21.1% from $34.5 million for the fourth quarter of 2015.  With a 22.1% increase in weighted average diluted shares outstanding, primarily due to the issuance of common stock in January and February 2016, related to the acquisition of Priory Group, net income from continuing operations attributable to Acadia stockholders per diluted share decreased 2.0% to $0.48 for the fourth quarter of 2016 from $0.49 for the fourth quarter of 2015.

39.     In addition, the February 23, 2017 press release discussed the state of the Company's U.K. operations, including remarks from Jacobs:

"The Priory acquisition drove the majority of our revenue growth for 2016, as we gained nearly 6,200 net additional beds in the U.K. due to the combined effect of the acquisition and the subsequent facility sale. These beds represented a majority of the 71.7%, or over 7,100 bed, increase in total beds at the end of 2016 from the end of 2015. This increase includes 967 new beds added to existing or de novo facilities during the year, consisting of 827 beds to existing facilities and 140 beds to de novo facilities. During the fourth quarter, 279 new beds were added to existing facilities, and we expect to add more than 800 new beds during 2017, primarily to existing facilities."

. . . Same facility revenue in the U.K. grew 4.2%, on a 4.7% increase in patient days offset by a 0.5% decrease in revenue per patient day. Management believes that same facility results in the U.K. reflected disruption throughout the fourth quarter resulting from the focus, time and effort required to complete the divestiture in late November and to begin the integration of Priory's operations into Acadia.

40.     Finally, the February 23, 2017 press release discussed Acadia's "financial guidance for 2017 and the first quarter of 2017," as follows:

- Revenue for 2017 in a range of $2.85 billion to $2.9 billion;

- Adjusted EBITDA for 2017 in a range of $625 million to $640 million;

- Adjusted earnings per diluted share for 2017 in a range $2.40 to $2.50; and

- Adjusted earnings per diluted share for the first quarter of 2017 in a range of $0.45 to $0.47.

41.     On February 24, 2017, Acadia filed with the SEC its annual report on Form 10-K for the year ended December 31, 2016. The annual report was signed by defendants Jacobs, Duckworth, Bissell, Gordon, Gregg, Grieco, Miquelon, Petrie, Rogers and Waud. The annual report also contained certifications under the Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley") signed by Jacobs and Duckworth. These certifications provided that the undersigned had reviewed the Form 10-K and it contained no materially untrue statements or omissions, fairly represented in all material respects the financial condition of Acadia, was accurate in all material respects, and disclosed any material changes to the Company's internal control over financial reporting.

42. The 2016 annual report repeated the fiscal year 2016 financial results reported in the February 23, 2017 press release. The 2016 annual report also repeated the Company's statements regarding Acadia's U.K. operations that were reported in the February 23, 2017 press release.

43. The 2016 annual report also discussed the "[f]avorable industry and legislative trends" that it believed were one of its "competitive strengths," including its U.K. operations:

> The mental health hospitals market in the U.K. was estimated at £15.9 billion for 2014/2015. As a result of government budget constraints and an increased focus on quality, the independent mental health hospitals market has witnessed significant expansion in the last decade, making it one of the fastest growing sectors in the U.K. healthcare industry. Demand for independent sector beds has grown significantly as a result of the National Health Service (the "NHS") reducing its bed capacity and increasing hospitalization rates. Independent sector demand is expected to further increase in light of additional bed closures and reduction in community capacity by the NHS.

44. In the 2016 annual report, defendants characterized Acadia as "the leading independent provider of mental health services in the U.K." Defendants also discussed the emphasis that the U.K. Department of Health put on quality of care:

> The U.K. Department of Health recently identified priorities for essential change in mental health that include, among other things, funding providers based on the quality of their service rather than volume of patients, allocating funds to support specialized housing for people with mental health problems and adopting a new rating system and inspection process to improve the quality of care. Increasing political focus on the provision of mental health services in the U.K. and increasing support for the rights of mental health patients are expected to lead to further increases in the size of the mental health market in the U.K. In addition, rising demand for mental health services in the U.K. coupled with a constrained mental healthcare funding environment are increasing pressure to improve operational efficiency and refer patients to single provider programs with care pathways that more appropriately reflect each patient's specific mental health needs. As a result of these pressures and an increased focus on quality, the independent mental health market has witnessed significant expansion in the last decade, making it one of the fastest growing sectors in the U.K. healthcare industry.

45. On April 25, 2017, Acadia issued a press release entitled "Acadia Healthcare Reports First Quarter GAAP EPS of $0.40 and Adjusted EPS of $0.46; Affirms Financial Guidance for 2017." In the press release, Acadia announced financial results for the first quarter ended March 31, 2016:

Revenue for the quarter was $679.2 million, an increase of 10.1% from $616.8 million for the first quarter of 2016. Net income attributable to Acadia stockholders increased 36.1% to $35.0 million for the first quarter of 2017 from $25.7 million for the first quarter of 2016. Net income attributable to Acadia stockholders per diluted share increased 29.0% to $0.40 for the first quarter of 2017 from $0.31 for the first quarter of 2016, on a 4.2% increase in weighted average diluted shares outstanding.

46. In addition, the April 25, 2017 press release discussed the state of the Company's

U.K. operations, including remarks from Jacobs:

"Our revenue growth primarily resulted from the acquisition of Priory Group on February 16, 2016, which added approximately 6,200 beds, net of the divestiture, to our operations in the United Kingdom. In the trailing 12 months ended March 31, 2017, we also acquired nearly 240 beds through three transactions and added 719 beds to existing facilities and de novo facilities, 82 of which were added to existing facilities in the first quarter of 2017.

"The favorable impact of the growth in our beds in operation during the first quarter was partially offset by a reduction of approximately six percentage points in our revenue growth rate due to the post-Brexit decline in the exchange rate of the British Pound Sterling to the U.S. dollar, in addition to the impact of the first quarter of 2017 having one less day due to leap year in 2016."

. . . Same facility revenues increased 2.6% for the U.K. facilities, with a 0.1% increase in patient days and a 2.4% increase in revenue per patient day. Total same facility EBITDA margin declined to 25.2% for the first quarter of 2017 from 25.6% for the first quarter of 2016. Acadia's consolidated adjusted EBITDA was $136.4 million for the first quarter of 2017, up 4.1% from $131.0 million for the first quarter of 2016.

47. Finally, the April 25, 2017 press release "affirmed [Acadia's] previously established

financial guidance for 2017, as follows":

- Revenue for 2017 in a range of $2.85 billion to $2.9 billion;

- Adjusted EBITDA for 2017 in a range of $625 million to $640 million; and

- Adjusted earnings per diluted share for 2017 in a range $2.40 to $2.50.

48. On April 26, 2017, Acadia filed with the SEC its quarterly report on Form 10-Q for

the three months ended March 31, 2017. The quarterly report was signed by defendant Duckworth

and contained Sarbanes-Oxley certifications signed by Jacobs and Duckworth. These certifications

provided that the undersigned had reviewed the Form 10-Q and it contained no materially untrue

statements or omissions, fairly represented in all material respects the financial condition of Acadia,

was accurate in all material respects, and disclosed any material changes to the Company's internal control over financial reporting.

49. The April 26, 2017 quarterly report repeated the first quarter 2017 financial results reported in the April 25, 2017 press release. The April 26, 2017 quarterly report also repeated the Company's statements regarding Acadia's U.K. operations that were reported in the April 25, 2017 press release.

50. On June 9, 2017, Acadia filed with the SEC a Form S-3 registration statement and prospectus using a "shelf" registration, or continuous offering process. Under the shelf registration, Acadia would sell securities described in various future prospectus supplements in one or more offerings. The prospectus supplements would form part of the Registration Statement for each offering. The Form S-3 stated in pertinent part:

### INCORPORATION OF CERTAIN DOCUMENTS BY REFERENCE

The SEC allows us to "incorporate by reference" information into this prospectus, which means that we can disclose important information to you by referring you to another document filed separately with the SEC. The information incorporated by reference into this prospectus is deemed to be part of this prospectus, except for any information superseded by information contained directly in this prospectus or contained in another document filed with the SEC in the future which itself is incorporated into this prospectus.

We are incorporating by reference the following documents, which we have previously filed with the SEC:

(1) our Annual Report on Form 10-K for the fiscal year ended December 31, 2016;

(2) our Quarterly Report on Form 10-Q for the three months ended March 31, 2017;

(3) our Current Reports on Form 8-K filed May 10, 2017 and May 25, 2017;

(4) the information specifically incorporated by reference into our Annual Report on Form 10-K for the fiscal year ended December 31, 2016 from our Definitive Proxy Statement on Schedule 14A filed with the SEC on April 13, 2017; and

(5) a description of our capital stock as set forth in our Registration Statement on Form 8-A, filed on October 31, 2011.

51.     On July 27, 2017, Acadia issued a press release entitled "Acadia Healthcare Reports Second Quarter GAAP EPS of $0.57 and Adjusted EPS of $0.66." In the press release, Acadia announced its financial results for the second quarter ended June 30, 2017:

> Revenue for the quarter was $715.9 million, a decline of 5.4% from $756.5 million for the second quarter of 2016. Net income attributable to Acadia stockholders was $49.6 million, or $0.57 per diluted share, for the second quarter of 2017 compared with $56.4 million, or $0.65 per diluted share, for the second quarter of 2016.

52.     In addition, the July 27, 2017 press release discussed the state of the Company's U.K. operations, including remarks from Jacobs: "'U.K. same facility revenues increased 4.0%, on growth of 2.8% and 1.1% in patient days and revenue per patient day, respectively.'"

53.     Finally, the July 27, 2017 press release narrowed the Company's previously established guidance as follows:

- Revenue for 2017 in a range of $2.85 billion to $2.87 billion;

- Adjusted EBITDA for 2017 in a range of $628 million to $635 million; and

- Adjusted earnings per diluted share for 2017 in a range $2.42 to $2.47.

54.     On July 28, 2017, Acadia filed with the SEC its quarterly report on Form 10-Q for the three months ended June 30, 2017. The quarterly report was signed by defendant Duckworth and contained Sarbanes-Oxley certifications signed by Jacobs and Duckworth. These certifications provided that the undersigned had reviewed the Form 10-Q and it contained no materially untrue statements or omissions, fairly represented in all material respects the financial condition of Acadia, was accurate in all material respects, and disclosed any material changes to the Company's internal control over financial reporting.

55.     The July 28, 2017 quarterly report repeated the second quarter 2017 financial results reported in the July 27, 2017 press release. The July 28, 2017 quarterly report also repeated the

Company's statements regarding Acadia's U.K. operations that were reported in the July 27, 2017 press release.

56.     On or about August 18, 2017, Acadia and underwriter defendant Citigroup priced the Offering at $50.69 per share and filed a Prospectus Supplement (which formed part of the Registration Statement) with the SEC, pursuant to which certain selling stockholders (including defendants Jacobs, Turner and Waud, and certain related entities) sold over 1.5 million shares of Acadia securities to Citigroup (for proceeds of over $76 million), which then sold those shares to the public.  The Prospectus Supplement stated in pertinent part as follows:

> We are incorporating by reference the following documents, which we have previously filed with the SEC:
>
> (1)     our Annual Report on Form 10-K for the fiscal year ended December 31, 2016;
>
> (2)     our Quarterly Reports on Form 10-Q for the quarters ended March 31, 2017 and June 30, 2017;
>
> (3)     our Current Reports on Form 8-K filed with the SEC on May 10, 2017 and May 25, 2017;
>
> (4)     the information specifically incorporated by reference into our Annual Report on Form 10-K for the fiscal year ended December 31, 2016 from our Definitive Proxy Statement on Schedule 14A, filed with the SEC on April 13, 2017; and
>
> (5)     a description of our capital stock as set forth in our Registration Statement on Form 8-A, filed on October 31, 2011.

57.     The statements referenced above in ¶¶38-56 were each materially false and misleading when made because they misrepresented and failed to disclose that (a) the quality of Acadia's U.K. operations did not give the Company a "competitive strength" which would drive future growth and profitability; and (b) defendants lacked a reasonable basis for their positive statements about the Company's business and financial prospects during the Class Period, including their guidance issued and reaffirmed throughout the Class Period.

58. On October 24, 2017, Acadia issued a press release entitled "Acadia Healthcare Reports Third Quarter Financial Results; Produces U.S. Same Facility Revenue Growth of 6.3%; Revises 2017 Financial Guidance." In the press release, the Company disclosed, for the first time, that its struggling U.K. facilities had missed the forecasts that defendants had stated to investors would be met throughout the year:

> "The third quarter financial results for our operations in the United Kingdom reflected a lower census and higher operating costs than anticipated. After experiencing expected seasonal softness in census for the month of August, the typical rebound in census in the month of September was significantly weaker than anticipated. In addition, due to further tightening in the labor market primarily for nurses and other clinical staff, we incurred higher agency labor expense than planned. . . . U.K. same facility EBITDA margin was 21.4% for the quarter compared with 22.6% for the third quarter last year. Total facility EBITDA margin in the U.K. declined 170 basis points to 19.3% for the third quarter of 2017."

59. The October 24, 2017 press release also stated that Acadia was reducing its recently reaffirmed fiscal year 2017 guidance. Adjusted earnings per diluted share for 2017 was reduced to $2.23 to $2.25 per diluted share from $2.42 to $2.47 per diluted share. Adjusted EBITDA was reduced to a range of $600 million to $605 million from a range of $628 million to $635 million. Finally, revenue for 2017 was reduced to $2.82 billion to $2.83 billion from a range of $2.85 billion to $2.87 billion.

60. As a direct result of this news, Acadia stock lost **26% of its value**, falling from its closing price of $44.12 per share on October 24, 2017 to a closing price of $32.68 per share on October 25, 2017.

## ADDITIONAL SCIENTER ALLEGATIONS

61. As alleged herein, the Officer Defendants acted with scienter in that they knew, or recklessly disregarded, that the public documents and statements they issued and disseminated to the investing public in the name of the Company or in their own name during the Class Period were materially false and misleading. The Officer Defendants knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements and documents as primary violations

of the federal securities laws. The Officer Defendants, by virtue of their receipt of information reflecting the true facts regarding Acadia, their control over and/or receipt and/or modification of Acadia's allegedly materially misleading misstatements, were active and culpable participants in the fraudulent scheme alleged herein.

62. The Officer Defendants knew and/or recklessly disregarded the false and misleading nature of the information that they caused to be disseminated to the investing public. The fraudulent scheme described herein could not have been perpetrated during the Class Period without the knowledge and complicity, or at least the reckless disregard, of personnel at the highest levels of the Company, including the Officer Defendants.

63. The Officer Defendants, because of their positions with Acadia, controlled the contents of the Company's public statements during the Class Period. Each defendant was provided with or had access to copies of the documents alleged herein to be false and/or misleading prior to or shortly after their issuance, and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information, these defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations that were being made were false and misleading. As a result, each of these defendants is responsible for the accuracy of Acadia's corporate statements and is therefore responsible and liable for the representations contained therein.

## LOSS CAUSATION/ECONOMIC LOSS

64. During the Class Period, as detailed herein, the Officer Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the prices of Acadia securities and operated as a fraud or deceit on Class Period purchasers of Acadia securities by failing to disclose and misrepresenting the adverse facts detailed herein. When defendants' prior

misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the prices of Acadia securities fell precipitously as the prior artificial inflation came out of the prices.

65.     As a result of their purchases of Acadia securities during the Class Period, plaintiff and the other Class members suffered economic loss, *i.e.*, damages, under the federal securities laws. The Officer Defendants' false and misleading statements had the intended effect and caused Acadia securities to trade at artificially inflated levels throughout the Class Period, with Acadia stock trading as high as $53 per share on July 28, 2017.

66.     By failing to disclose to investors the adverse facts detailed herein, the Officer Defendants presented a misleading picture of Acadia's business and prospects. When the truth about the Company was revealed to the market, the prices of Acadia securities fell precipitously. These declines removed the inflation from the prices of Acadia securities, causing real economic loss to investors who had purchased Acadia securities during the Class Period.

67.     The declines in the price of Acadia securities after the corrective disclosures came to light were a direct result of the nature and extent of the Officer Defendants' fraudulent misrepresentations being revealed to investors and the market. The timing and magnitude of the price declines in Acadia securities negate any inference that the loss suffered by plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors, or Company-specific facts unrelated to the Officer Defendants' fraudulent conduct. The economic loss, *i.e.*, damages, suffered by plaintiff and the other Class members was a direct result of the Officer Defendants' fraudulent scheme to artificially inflate the prices of Acadia securities and the subsequent significant decline in the value of Acadia securities when the Officer Defendants' prior misrepresentations and other fraudulent conduct were revealed.

## APPLICABILITY OF PRESUMPTION OF RELIANCE:
## FRAUD-ON-THE-MARKET DOCTRINE

68.     At all relevant times, the market for Acadia securities was an efficient market for the following reasons, among others:

(a)     Acadia stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient, electronic stock market;

(b)     As a regulated issuer, Acadia filed periodic public reports with the SEC and the NASDAQ;

(c)     Acadia regularly communicated with public investors via established market communication mechanisms, including the regular dissemination of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     Acadia was followed by securities analysts employed by major brokerage firms, who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

69.     As a result of the foregoing, the market for Acadia securities promptly digested current information regarding Acadia from all publicly available sources and reflected such information in the prices of the securities.  Under these circumstances, all purchasers of Acadia securities during the Class Period suffered similar injury through their purchase of Acadia securities at artificially inflated prices, and a presumption of reliance applies.

## NO SAFE HARBOR

70.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pled in this Complaint.  Many of the specific statements pled herein were not identified as "forward-looking statements" when

made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pled herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Acadia who knew that the statement was false when made.

## COUNT I

### Violations of §11 of the 1933 Act
### Against All Defendants

71. Plaintiff incorporates ¶¶7-25, 31-36, 50 and 56-57 by reference. Plaintiff disclaims all allegations of fraud with respect to this cause of action.

72. This Count is brought pursuant to §11 of the 1933 Act, 15 U.S.C. §77k, on behalf of the Class, against all defendants.

73. The Prospectus and Registration Statement was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary in order to make the statements made not misleading, and omitted to state material facts required to be stated therein.

74. Acadia is the registrant for the Prospectus and Registration Statement. The defendants named in this Count were responsible for the contents and dissemination of the Prospectus and Registration Statement.

75. As issuer of the securities, Acadia is strictly liable to plaintiff and the Class for any misstatements and omissions.

76. None of the defendants named in this Count made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Prospectus and

Registration Statements were true and without omissions of any material facts and were not misleading.

77.     By reason of the conduct herein alleged, each defendant named in this Count violated, and/or controlled a person who violated, §11 of the 1933 Act.

78.     Plaintiff and the Class have sustained damages.  The value of Acadia securities has declined substantially subsequent to and due to these defendants' violations.

79.     At the time of their purchases of Acadia securities, plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein.  Less than one year has elapsed from the time that plaintiff discovered or reasonably could have discovered the facts upon which this Complaint is based to the time that plaintiff filed this Complaint.  Less than three years have elapsed between the time that the securities upon which this Count is brought were offered to the public and the time plaintiff filed this Complaint.

## COUNT II

### Violations of §12(a)(2) of the 1933 Act
### Against All Defendants

80.     Plaintiff incorporates ¶¶7-25, 31-36, 50 and 56-57 by reference.  Plaintiff disclaims all allegations of fraud with respect to this cause of action.

81.     By means of the defective Prospectus, defendants sold Acadia securities to plaintiff and other members of the Class.

82.     The Registration Statement and Prospectus contained untrue statements of material fact, and concealed and failed to disclose material facts, as detailed above.  Defendants owed plaintiff and the other members of the Class who purchased Acadia securities pursuant to the Registration Statement and Prospectus the duty to make a reasonable and diligent investigation of the statements contained in the Registration Statement and Prospectus to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to

make the statements contained therein not misleading. These defendants, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the Registration Statement and Prospectus as set forth above.

83. Plaintiff did not know, nor in the exercise of reasonable diligence could have known, of the untruths and omissions contained in the Registration Statement and Prospectus at the time plaintiff acquired Acadia securities.

84. By reason of the conduct alleged herein, defendants violated §12(a)(2) of the 1933 Act. As a direct and proximate result of such violations, plaintiff and the other members of the Class who purchased Acadia securities pursuant to the Registration Statement and Prospectus sustained substantial damages in connection with their purchases of the securities. Accordingly, plaintiff and the other members of the Class who hold the securities issued pursuant to the Registration Statement and Prospectus have the right to rescind and recover the consideration paid for their securities, and hereby tender their securities to the defendants sued in this Count. Class members who have sold their securities seek damages to the extent permitted by law.

## COUNT III

### Violations of §15 of the 1933 Act
### Against All Defendants

85. Plaintiff incorporates ¶¶7-25, 31-36, 50, 56-57 and 71-84 by reference. Plaintiff disclaims all allegations of fraud with respect to this cause of action.

86. This Count is brought pursuant to §15 of the 1933 Act against all defendants.

87. The 1933 Act Defendants named in this Count were each control persons of Acadia at the time of the Registration Statement and Prospectus by virtue of their positions as directors and/or senior officers of Acadia, or by virtue of underwriting the August 22, 2017 offering. Defendants named in this Count each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholders of Acadia.

## COUNT IV

### Violations of §10(b) of the 1934 Act and Rule 10b-5
### Against Acadia and the Officer Defendants

88.     Plaintiff incorporates ¶¶1-70 by reference.

89.     During the Class Period, defendant Acadia and the Officer Defendants disseminated or approved the false statements specified above in ¶¶38-56, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

90.     The defendants named in this Count violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

(a)     employed devices, schemes and artifices to defraud;

(b)     made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)     engaged in acts, practices, and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Acadia securities during the Class Period.

91.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Acadia securities.  Plaintiff and the Class would not have purchased Acadia securities at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by these defendants' misleading statements.

## COUNT V

### Violations of §20(a) of the 1934 Act
### Against All Defendants Except for Citigroup

92.     Plaintiff incorporates ¶¶1-70 and 88-91 by reference.

93. Defendants named in this Count acted as controlling persons of Acadia within the meaning of §20(a) of the 1934 Act. By reason of their positions with the Company, and their ownership of Acadia securities, these defendants had the power and authority to cause Acadia to engage in the wrongful conduct complained of herein. By reason of such conduct, these defendants are liable pursuant to §20(a) of the 1934 Act.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief and judgment as follows:

A. Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B. Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C. Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D. Awarding such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

DATED: March 14, 2018       ROBBINS GELLER RUDMAN
                                          & DOWD LLP
                                    CHRISTOPHER M. WOOD, #032977

*s/ Christopher M. Wood*
CHRISTOPHER M. WOOD

414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2203
615/252-3798 (fax)
cwood@rgrdlaw.com

VANOVERBEKE, MICHAUD &
    TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)
tmichaud@vmtlaw.com

Attorneys for Plaintiff

BARRETT JOHNSTON MARTIN
    & GARRISON, LLC
JERRY E. MARTIN, #20193
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2202
615/252-3798 (fax)
jmartin@barrettjohnston.com

Local Counsel

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

JACKSON COUNTY EMPLOYEES' RETIREMENT SYSTEM ("Plaintiff") declares:

1.     Plaintiff has reviewed a complaint and authorized its filing.

2.     Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.     Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.     Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

| Security | Transaction | Date | Price Per Share |
|----------|-------------|------|-----------------|

*See* attached Schedule A.

5.     Plaintiff has not sought to serve or served as a representative party in a class action that was filed under the federal securities laws within the three-year period prior to the date of this Certification except as detailed below:

*In re BHP Billiton Limited Sec. Litig.*, No. 1:16-cv-01445 (S.D.N.Y.)

6.     The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of

any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 13th day of March , 2018.

JACKSON COUNTY EMPLOYEES'
RETIREMENT SYSTEM

By: _____

Its: _____Chairperson_____

- 2 -

ACADIA

**SCHEDULE A**

**SECURITIES TRANSACTIONS**

Acquisitions

| Date Acquired | Type/Amount of Securities Acquired | Price |
|---|---|---|
| 03/07/2017 | 126 | $43.48 |
| 03/08/2017 | 233 | $43.60 |
| 03/09/2017 | 304 | $43.13 |
| 03/09/2017 | 704 | $43.33 |
| 03/10/2017 | 534 | $42.70 |
| 03/13/2017 | 177 | $42.51 |
| 03/14/2017 | 168 | $42.21 |
| 03/15/2017 | 124 | $42.04 |
| 03/15/2017 | 351 | $42.06 |
| 03/16/2017 | 151 | $41.93 |
| 03/16/2017 | 2,795 | $41.75 |
| 03/17/2017 | 71 | $41.75 |
| 03/17/2017 | 469 | $41.75 |
| 03/20/2017 | 259 | $40.66 |
| 03/21/2017 | 94 | $39.89 |
| 03/21/2017 | 632 | $39.97 |
| 03/22/2017 | 60 | $39.12 |
| 03/22/2017 | 692 | $38.80 |
| 03/23/2017 | 222 | $39.61 |
| 04/03/2017 | 54 | $42.71 |
| 04/07/2017 | 88 | $43.05 |
| 04/11/2017 | 46 | $43.12 |
| 04/12/2017 | 135 | $42.87 |
| 04/13/2017 | 251 | $42.64 |
| 04/17/2017 | 71 | $42.38 |
| 04/18/2017 | 199 | $42.57 |
| 04/19/2017 | 154 | $42.72 |
| 04/20/2017 | 183 | $41.75 |
| 04/24/2017 | 23 | $43.52 |
| 04/25/2017 | 287 | $43.28 |
| 04/26/2017 | 626 | $41.92 |
| 04/27/2017 | 40 | $42.31 |
| 05/08/2017 | 57 | $43.85 |
| 05/09/2017 | 192 | $43.47 |
| 05/15/2017 | 73 | $43.83 |
| 05/16/2017 | 132 | $43.56 |
| 05/17/2017 | 204 | $42.72 |
| 05/18/2017 | 51 | $42.15 |
| 05/19/2017 | 20 | $43.51 |
| 05/22/2017 | 11 | $43.53 |
| 05/23/2017 | 118 | $43.25 |
| 05/24/2017 | 234 | $42.47 |
| 05/25/2017 | 170 | $42.55 |
| 05/26/2017 | 123 | $42.05 |
| 05/30/2017 | 374 | $41.55 |
| 05/31/2017 | 119 | $41.03 |